IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**BRANDON MENG**                                                                               **PLAINTIFF**

**VS.**                                                                       **CAUSE NO.: 2:24cv199-KS-MTP**

**WILLIAM CAREY UNIVERSITY,**
**acting through its Division of the College of**
**Osteopathic Medicine,**
**ITALO R. SUBBARAO, D.O., and**
**EDWARD FRIEDLANDER, M.D.**                                                **DEFENDANTS**

**JURY TRIAL DEMANDED**

## COMPLAINT

This is an action to recover actual and punitive damages and injunctive relief for violations of federal and state law. Plaintiff shows the court the following facts:

1.

Plaintiff BRANDON MENG is an adult citizen of the Nation of Canada, and is lawfully in the United States of America on a student Visa to pursue his education.

2.

Defendant WILLIAM CAREY UNIVERSITY, acting through its Division of the College of Osteopathic Medicine, is a corporation with principal place of business and state of corporation in the State of Mississippi and in no other state. Defendant University may be served with process upon its President, Dr. Ben Burnett, at 710 William Carey Parkway, Hattiesburg, Mississippi 39401. Defendant University receives federal assistance so as to make it subject to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.

Defendant ITALO R. SUBBARAO, D.O., is a citizen of the State of Mississippi. Defendant Subbarao may be served with process at his place of employment, the College of Osteopathic Medicine, William Carey University, at 710 William Carey Parkway, Hattiesburg, Mississippi 39401.

Defendant EDWARD FRIEDLANDER, M.D., is a citizen of the State of Mississippi and may be served with process at his place of employment, the College of Osteopathic Medicine, William Carey University, at 710 William Carey Parkway, Hattiesburg, Mississippi 39401.

3.

This Court has diversity jurisdiction under 28 U.S.C. § 1332. This Court also has federal question jurisdiction under 28 U.S.C. § 1331, and civil rights jurisdiction under 28 U.S.C. § 1343. There is more than $75,000.00 in controversy.

4.

In the fall of 2021, Plaintiff entered an admissions contract with Defendant William Carey University, to attend its division of Osteopathic Medicine. Plaintiff is of Chinese ethnicity, and is a citizen of the Nation of Canada.

5.

Defendant Italo R. Subbarao, D.O., at all relevant times, was the Dean of the College of Osteopathic Medicine at William Carey University and was the supervisor of Defendant Edward Friedlander, M.D.

6.

At the time of Plaintiff's admission, and throughout the time relevant to this complaint, Defendant Edward Friedlander, M.D., was a pathology professor at William Carey University

division of Osteopathic Medicine.

7.

The successful performance of Plaintiff's contract with Defendant William Carey University would entitle Plaintiff to pursue a career as an osteopathic physician where he would be expected to earn substantial income.

8.

Plaintiff Brandon Meng was suffering from nausea and flu symptoms in August. These minor illnesses were not substantially different from illnesses suffered by other non-Chinese students.

9.

On or about September 21, 2023, Defendant Friedlander, without medical evidence or any diagnostic test, suddenly accused Plaintiff of having tuberculosis, an infectious disease. Defendant Friedlander made no such accusation against other students with colds, who were not of Chinese nationality. Defendant Friedlander had previously indicated a dislike of Plaintiff. Dr. Friedlander had no reason to dislike Plaintiff except for Plaintiff's Chinese racial characteristics.

10.

Defendant Friedlander communicated his claim of tuberculosis to Defendant Subbarao's immediate subordinate, Dr. Smith-Trigg, who, in turn, communicated this information to Defendant Subbarao.

11.

Plaintiff attempted to seek resolution by visiting with Defendant Friedlander at his office. Defendant Friedlander ejected Plaintiff from his office and would not discuss the matter. Prior to

Defendant Friedlander's ejecting him from his office, Plaintiff recognized that he was being treated differently from other students and asked Defendant Friedlander, "Is it because of my background?"

12.

On the same day, Defendant Friedlander communicated about the matter to Defendant Subbarao. Without factual basis, Defendant Subbarao accused Plaintiff of having threatened Defendant Friedlander and ordered Plaintiff to leave the campus accompanied by a security guard. The removal from campus was done without any due process or any meaningful opportunity for Plaintiff to be heard. Plaintiff later learned that Defendant Friedlander has denied that he ever told Defendant Subbarao that Plaintiff had ever threatened him.

13.

Personnel policies contained in the student handbook require a factual basis for disciplinary action and an investigation by Defendant University's "Student Affairs Committee," before disciplinary action can be taken against a student. Defendant Subbarao removed Plaintiff from campus without factual basis and before receiving any investigation from the Student Affairs Committee. The student handbook is enforceable, since, under Mississippi law, such handbooks are contractual in nature and entities which issue such handbooks are subject to having them enforced as a contract. Relevant excerpts from the Student Handbook are incorporated herein and attached hereto as Exhibit "A."

14.

On September 28, 2023, after Plaintiff had already been removed from the campus by Defendant Subbarao, the Student Affairs Committee investigated and determined that Plaintiff had committed no misconduct warranting disciplinary action. Following its investigation into the matter the Student Affairs Committee recommended that no disciplinary action be taken against Plaintiff.

Unfortunately, Defendant Subbarao had already taken disciplinary action and the committee was powerless to undo the harm that Plaintiff's eviction from the campus had caused.

15.

On October 2, 2023, Defendant Subbarao delivered Plaintiff a baseless "Warning for Unprofessional Behavior," which he caused to be placed in Plaintiff's student file.

16.

Concerned that he had unlawfully removed Plaintiff from campus, without factual basis, and without a recommendation from the Student Affairs Committee, Defendant Subbarao directed his Director of Student Affairs, Mallory Davis, to send an email to all members of the Student Affairs Committee saying, "call me." When the committee members called Ms. Davis, Ms. Davis, acting as Defendant Subbarao's agent, and on his behalf, told them that Defendant Friedlander has amended his charge to charge that Plaintiff had made threats and the committee needed to change its recommendation based upon the direction of Defendant Subbarao. Defendant Subbarao himself sent an email containing a changed statement. Upon information and belief, Defendant Subbarao wrote the changed statement for Defendant Friedlander. Defendant Subbarao directed the committee to reconsider and recommend disciplinary action against Plaintiff. When the committee met a second time, Defendant Friedlander again admitted that no threats had been made. Defendant Friedlander was apparently unwilling to join in the falsifications being made by Defendant Subbarao that Plaintiff had threatened Defendant Friedlander.

17.

The Student Affairs Committee refused to follow Defendant Subbarao's illegal directive to recommend disciplinary action. Nevertheless, the harm had been done because Plaintiff had been ejected from campus, interrupting his course of study, and ultimately making it impossible for

Plaintiff to continue medical school.

18.

Plaintiff was cast into severe depression by Defendants' actions. On October 18, 2023, Plaintiff was diagnosed with adjustment disorder with depressed mood. The expulsion from campus had caused Plaintiff to be unable resume his medical career and had destructive effects upon Plaintiff's mental state.

19.

Plaintiff was removed from campus during Plaintiff's cardiology block, which is a crucial portion of the medical school training. Missing time from this block made it impossible for Plaintiff to catch up on his studies since missing time from the cardiology block prevented Plaintiff from being able to complete the year's study. Further, Defendant Friedlander's prejudice against Plaintiff made it impossible for Plaintiff to study under him.

20.

After his expulsion, Plaintiff was sent inconsistent emails from Defendant Subbarao's immediate subordinate regarding his status on campus. The contradictory messages left Plaintiff uncertain as to how to handle the matter and how to attempt to return to school. Morever, Plaintiff's mental state prevented his return.

21.

Plaintiff was treated differently because of his Chinese ancestry. Plaintiff knows of a classmate, who is not of Chinese ancestry. who had threatened and stalked another student. This non-Chinese student was allowed to continue his schooling uninterrupted. Morever, upon information and belief, Defendant Subbarao has never removed a non-Chinese student from campus without a

factual basis, and without complying with the student handbook.

22.

Prior to the incident complained of, Plaintiff had already been required to retake one year of medical school because of his score on a practice test. This practice test is called the "COMSAE." The American Osteopathic Association's position is that the COMSAE test is not a predictor of the actual board examination score. Plaintiff has passed every single WCUCOM course, has never been remediated, or failed any class. The fact that Plaintiff had been set back earlier because of his score on the practice test is not an indication that Plaintiff would not have completed medical school. More than half of William Carey University's medical students initially failed this practice test.

23.

Combined with Plaintiff's having to repeat a year of medical school, the actions of Defendants caused Plaintiff to exceed the six (6) year time limit allowed for a medical student to graduate. As a result, Plaintiff will no longer be able to graduate from medical school so as to obtain a medical residency. Plaintiff's potential career as a physician has been ruined.

24.

Defendants are jointly and civilly liable to Plaintiff for:

    A.    Lost income for the amount Plaintiff would have earned over his career as a medical physician;

    B.    Mental anxiety, stress, and damages to reputation;

    C.    Punitive damages; and

    D.    Injunctive relief returning him to medical school.

25.

Plaintiff alleges the following causes of action:

**COUNT 1: DEFENDANT WILLIAM CAREY UNIVERSITY'S VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964.** Defendant William Carey University has discriminated against Plaintiff based upon his Chinese ethnicity in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d**.**

**COUNT 2: DEFENDANT WILLIAM CAREY UNIVERSITY'S LIABILITY FOR BREACH OF STUDENT HANDBOOK.** By failing to follow the student handbook, Defendant William Carey University violated its contract with Plaintiff. This contract required Plaintiff not be disciplined except upon the commission of wrongdoing and upon investigation and recommendation of the Student Affairs Committee. Had the handbook been followed, Plaintiff would not have been removed from school. Furthermore, the student handbook prohibits discrimination based on national origin.

**COUNT 3: BREACH OF THE IMPLIED OBLIGATION OF GOOD FAITH.** In Mississippi, every contract contains an implied obligation of good faith. By falsely accusing Plaintiff of having tuberculosis and causing Plaintiff to be expelled from campus without due process, Defendant William Carey University breached the implied obligation of good faith.

**COUNT 4: MALICIOUS INTERFERENCE WITH CONTRACT BY INDIVIDUAL DEFENDANT ITALO R. SUBBARAO.** Defendant Italo R. Subbarao maliciously interfered with Plaintiff's contract by baselessly ordering Plaintiff to be removed from campus, and by attempting to persuade the Student Affairs Committee to falsify the facts, so as to make up a false claim that Plaintiff had threatened Defendant Friedlander. These malicious acts by Defendant Subbarao were

the cause of Plaintiff's being removed from campus and ultimately losing his career and losing his opportunity to become a physician.

**COUNT 5: MALICIOUS INTERFERENCE WITH CONTRACT BY DEFENDANT FRIEDLANDER.** Defendant Friedlander intentionally interfered with Plaintiff's contract with William Carey University by falsely claiming Plaintiff had tuberculosis, which ultimately led to Plaintiff's inability to return to school and loss of his career.

**COUNT 6: DISCRIMINATION BASED UPON ETHNICITY UNDER 42 U.S.C. § 1981.** Defendants violated Plaintiff's civil rights under 42 U.S.C. § 1981 since Plaintiff was denied the same right to enter and complete his enrollment contract as would a person not of Chinese ethnicity.

**COUNT 7: BREACH OF CONTRACT.** Defendant William Carey violated its express and implied contract to permit Plaintiff to complete medical school so long as he met all lawful requirements.

**COUNT 8: VIOLATION OF COCA (COMMISSION ON OSTEOPATHIC COLLEGE ACCREDITATION).** The University is bound by the accreditation standards of the Commission on Osteopathic College Accreditation. In pertinent part these accreditation standards require non-discrimination with respect to ethnicity, require distribution of such policy, and require a mechanism to report alleged discrimination incidents and track their resolution. *See* Commission on Osteopathic College Accreditation, p. 18 of 146, attached as Exhibit "B." Defendants' failure to adhere to the standards was a proximate cause of the discrimination against Plaintiff and his ultimate loss of his status as a student.

## REQUEST FOR RELIEF

Plaintiff requests actual and punitive damages in the amount to be determined by a jury, in an amount sufficient to compensate Plaintiff for being unable to become a medical doctor, and for mental anxiety, stress, and damage to reputation. Plaintiff also requests a complete refund of tuition and living expenses for the two (2) and a half years that Plaintiff spent at WCUCOM. Plaintiff also requests reasonable attorneys' fees and costs.

RESPECTFULLY SUBMITTED, this the 23rd day of December, 2024.

BRANDON MENG, Plaintiff

By: /s/ JIM WAIDE
Jim Waide, MS Bar No. 6857
waide@waidelaw.com
Rachel Pierce Waide, MS Bar No. 100420
rpierce@waidelaw.com
Yance Falkner, MS Bar No. 106107
yfalkner@waidelaw.com
WAIDE & ASSOCIATES, P.A.
Post Office Box 1357
Tupelo, MS 38802-1357
(662) 842-7324 / Telephone
(662) 842-8056 / Facsimile

ATTORNEYS FOR PLAINTIFF