UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

BRANDON MENG                                                                                           PLAINTIFF

V.                                                                                        NO.: 2:24-cv-199-KS-MTP

WILLIAM CAREY UNIVERSITY,
acting through its Division of the College of
Osteopathic Medicine,
ITALO R. SUBBARAO, D.O., and
EDWARD FRIEDLANDER, M.D.                                                                DEFENDANTS

### BRIEF IN SUPPORT OF DEFENDANT EDWARD FRIEDLANDER'S MOTION TO DISMISS

Plaintiff Brandon Meng told Defendant Edward Friedlander, a professor in Plaintiff's medical school program at William Carey University, that he had missed an academic session because of a weeks-long illness. Dr. Friedlander told Plaintiff it was his responsibility to make sure he did not have an infectious illness. Plaintiff confronted Dr. Friedlander in his office about this email exchange, and the Dean of the medical school ultimately issued Plaintiff a warning for unprofessional behavior. Plaintiff now alleges Dr. Friedlander discriminated against him because of his Chinese ethnicity and tortiously interfered with Plaintiff's contract with the University. Plaintiff has failed to allege facts to support either claim against Dr. Friedlander, and those claims should be dismissed with prejudice.

### FACTS[1]

Plaintiff was admitted as a medical student (sometimes called a "student doctor") in the University's College of Osteopathic Medicine in 2021. Compl., at ¶ 4 [Doc. 1]. At some point

---

[1] Dr. Friedlander accepts the well-pleaded allegations of the Complaint as true for purposes of this Motion only and reserves the right to contest any alleged fact.

during this program, but before the events giving rise to this matter, Plaintiff "was required to retake one year of medical school because of his score on a practice test." *Id*. at ¶ 22.

Dr. Friedlander is a pathology professor in the College of Osteopathic Medicine. *Id*. at ¶ 6. On September 20, 2023, Dr. Friedlander emailed Plaintiff to ask why he had missed an academic session with another professor. Plaintiff replied the next morning:

> Hi Dr Friedlander,
>
> Sorry, I was feeling sick last night. I forgot to email him about it. I fell asleep early.
>
> Thank you very much
>
> Brandon Meng

Ex. "A" (Email thread between Meng and Friedlander). Dr. Friedlander responded:

> Okay Brandon. I'm sorry you're sick. If you forget to do something like this when you're on rotations, it will have serious consequences for you. Thanks for understanding.

*Id*. Plaintiff replied that he had been "sick since the beginning of the semester" and sometimes had chest pain and nausea:

> Thank you. I always been sick since the beginning of this semester. Back in August, I had fever and was constantly coughing. Sometimes I do have episodic chest pain and nausea. I am not sure if it is due to the stress I experienced over the summer as the 5 of us were not informed that we had to repeat the year until July 22nd due to the COMSAE. Can I make up for this missed session some other time?
>
> Thank you
>
> Brandon

*Id*. Dr. Friedlander responded to this information with concern for Plaintiff's health:

> Thanks for letting me know. Your physical health is your responsibility. This does not sound like "stress". In fact, if you were in my office, I'd have a chest x-ray and a TB skin test and anergy panel put on you at a bare minimum. It's especially your responsibility as a man with a cough to be sure you are not infectious.

*Id*.[2]

Upon receiving this email, Plaintiff went to WCU's campus to confront Dr. Friedlander in his office. Compl., at ¶ 11 [Doc. 1]. According to Plaintiff, Dr. Friedlander "ejected Plaintiff from his office and would not discuss the matter." *Id*. Plaintiff further claims Dr. Friedlander "communicated about the matter" with Dr. Italo Subbarao, the Dean of the College of Osteopathic Medicine, who "accused Plaintiff of having threatened Defendant Friedlander and ordered Plaintiff to leave the campus with a security guard." *Id*. at ¶ 12.

Plaintiff alleges a Student Affairs Committee investigated and determined no disciplinary action should be taken against him, but that Dr. Subbarao issued him a "Warning for Unprofessional Behavior" despite that recommendation. *Id*. at ¶¶ 14-15. This "warning" did not purport to suspend Plaintiff or remove him from the program, and Dr. Subbarao told him it would not be reported on his Medical Student Performance evaluation or his permanent record:

> 10/3/2023
> Brandon Meng OMS2
> RE: Warning for Unprofessional Behavior
> Student Doctor Meng
> Based upon evidence from the night of September 21, 2023 there was an interaction that was outside the scope of WCUCOM's professional expectations. As such, I am placing you on Non-Academic Warning for the duration of the academic year.
> Any violations of the Osteopathic Oath, the WCUCOM Student Handbook, or the WCUCOM Clinical Sciences Rotation guidelines will result in your referral to the Student Affairs Committee and could result in Non-academic Probation or your dismissal from WCUCOM.
> Per WCUCOM Student Handbook and Catalog: "Students on non-academic warning are prohibited from participation in student clubs, organizations, and peer tutoring, as well as travel to conventions, conferences, meetings, recruiting trips, or other travel. The Student Affairs Committee can recommend other prohibitions at their discretion," and indicates letters of warning are given in lieu of a more stringent penalty but may be considered as part of the committee's recommendations in future actions. This letter will not be reported on your MSPE or your permanent record.
> Please meet with Ms. Mallorie Davis for further instructions on continuing the academic year.
> I expect you to be a model student, exhibiting academic excellence and professional behavior. Please feel free to contact me at any time if I can be of assistance in attaining your goal of becoming an osteopathic physician. Any further occurrences of this sort could result in more serious action, including and up to your dismissal from the WCUCOM.
> Sincerely,
> Italo R. Subbarao, DO, MBA
> Dean, William Carey University College of Osteopathic Medicine
>
> Read by student on: 10/3/2023 3:52:46 PM (CST)

---

[2] The Court's consideration of this email thread at the 12(b)(6) stage is appropriate because the content of the communication is referenced in Plaintiff's Complaint and central to his claims against Dr. Friedlander. *See Lone Star Fund V (US), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (holding that courts may consider "documents attached to the motion to dismiss that are central to the claim and referenced by the complaint"); Compl., at ¶ 9 [Doc. 1].

3

Ex. "B" (Warning for Unprofessional Behavior).[3]

Plaintiff further alleges Dr. Subbarao tried to convince members of the Student Affairs Committee to change their recommendation because Dr. Friedlander had changed his statement, but the Committee refused to do so. Compl., at ¶ 16 [Doc. 1]. Plaintiff claims Dr. Subbarao "wrote the changed statement" for Dr. Friedlander and that Dr. Friedlander did not participate in Dr. Subbarao's alleged attempt to have the Committee change its recommendation. *Id*.

Plaintiff did not return to medical school, but he does not allege he was kicked out of the College. Rather, he claims the incident "interrupt[ed] his course of study and ultimately mad[e] it impossible for Plaintiff to continue medical school," that he could not "complete the year's study" because he missed time from a cardiology block, and that he was "uncertain as to how to handle the matter and how to attempt to return to school." *Id*. at ¶¶ 17-20.

### STANDARD OF REVIEW

FED. R. CIV. P. 12(b)(6) authorizes dismissal for failure to state a claim. "To avoid dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 570 (internal quotation omitted). In making this determination, courts accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). The court does not, however, accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron*

---

[3] The Court's consideration of this "warning" at the 12(b)(6) stage is appropriate because it is specifically referenced in the Complaint and central to the claims. Compl., at ¶ 15 [Doc. 1].

*Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (*quoting Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)); *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.").

### ARGUMENT

Plaintiff does not allege Dr. Friedlander removed him from medical school, recommended his removal, or was responsible for deciding whether discipline was appropriate for Plaintiff's actions. Rather, he claims Dr. Friedlander "suddenly accused [him] of having tuberculosis" because of his Chinese ancestry. Compl., at ¶ 9 [Doc. 1]. The facts as alleged do not plausibly support this allegation, and Plaintiff otherwise fails to state a claim of discrimination or tortious interference against Dr. Friedlander.

*1.    Plaintiff has failed to state a claim for race discrimination under Section 1981.*

42 U.S.C. § 1981(a) guarantees to all persons within the jurisdiction of the United States the "same right … to make and enforce contracts … as is enjoyed by white citizens …." This ban on race discrimination in contracting, however, does not amount to "a general cause of action for race discrimination." *Perry v. VHS San Antonio, L.L.C.*, 990 F.3d 918, 931 (5th Cir. 2021) (*citing Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003). A plaintiff asserting such a claim must show (1) he is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in Section 1981, such as the making and enforcing of a contract. *Perry*, 990 F.3d at 931 (*citing Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997)). Plaintiff must also plead that his race was the "but-for cause" of the loss of a legally protected right. *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 341 (2020). Plaintiff has failed to state such a claim against Dr. Friedlander.

### a. *Plaintiff had no contract with Dr. Friedlander.*

First, Plaintiff's § 1981 claim against Dr. Friedlander fails because his Complaint does not "identify an impaired contractual relationship" with Dr. Friedlander. *Perry*, 990 F.3d at 931 (*citing Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006)). The only purported contracts he identifies are an enrollment and/or admissions contract with William Carey University and the College of Osteopathic Medicine's Student Handbook. Compl., at ¶¶ 4, 13, p. 9, ex. "A" [Doc. 1]. Plaintiff does not allege Dr. Friedlander was a party to either purported contract.

Nor can Plaintiff proceed on the theory that Dr. Friedlander interfered with his contract(s) with the University in violation of Section 1981. The Fifth Circuit does not recognize a "a true third-party-interference theory of § 1981 liability." *Perry*, 990 F.3d at 933. Rather, the statute allows for third-party liability where the third party and the contracting entity are "essentially one and the same." *Id.* (*citing Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997)). This exception applies only where the Section 1981 defendant is "only nominally a third party." *Id.* Plaintiff's allegations against Dr. Friedlander fall well short of this standard.

Plaintiff's Section 1981 claim is based on his allegation that he "was denied the same right to enter and complete his enrollment contract as would a person not of Chinese ethnicity." Compl., at p. 9 [Doc. 1]. However, he does not allege Dr. Friedlander had – or exercised – any control over Plaintiff's enrollment status with the University. *See Howard v. Miss. State Univ.*, No. 1:13-cv-00154-MPM-DAS, 2015 U.S. Dist. LEXIS 53384, at *10 (N.D. Miss. Apr. 23, 2015) ("To be considered 'essentially the same' as the State [in employment action under § 1981], the employee must exercise control over the plaintiff's position."). Nor does he allege Dr. Friedlander had the authority to remove students from the program. Plaintiff alleges only that Dr.

Friedlander was *employed* by the University. Compl., at ¶¶ 2, 6 [Doc. 1]. Plaintiff's allegations are insufficient to support a claim that Dr. Friedlander and the University are "essentially one and the same," and this claim should be dismissed.

> b.   *Plaintiff has not alleged Dr. Friedlander deprived him of a legally protected right.*

Nor does Plaintiff plausibly allege Dr. Friedlander took any action that deprived Plaintiff of a legally protected contractual right. Plaintiff alleges Dr. Friedlander (1) "accused Plaintiff of having tuberculosis," (2) "communicated his claim of tuberculosis" to Dr. Smith-Trigg (another College administrator), (3) "ejected Plaintiff from his office and would not discuss the matter," and (4) "communicated" with Dr. Subbarao about his confrontation with Plaintiff. *Id*. at ¶¶ 9-12. None of these things, even if proven true, deprived Plaintiff of the benefit of any contract with the University.

First, Plaintiff does not allege Dr. Friedlander – or any other University employee, for that matter – removed him from the University's medical school program. While his Complaint uses the phrase "expulsion from campus" to describe Dr. Subbarao's alleged instruction for Plaintiff to leave campus the night of his confrontation with Dr. Friedlander, Compl., at ¶ 18 [Doc. 1], the Dean's warning letter specifically directed Plaintiff to contact the school "for further instructions on continuing the academic year." Ex. "B" (Warning for Unprofessional Behavior). The rest of Plaintiff's allegations make clear that he *chose* not to return to school, either because his classwork was briefly interrupted, because he was "uncertain" about the logistics of his return to school, and/or because of his mental state. Compl., at ¶¶ 17-20 [Doc. 1].

Second, Plaintiff alleges no *facts* that would establish Dr. Friedlander's mere *mention* of a hypothetical tuberculosis test impacted any contractual relationship. The record does not even support Plaintiff's allegation that Dr. Friedlander "accused" Plaintiff of having tuberculosis –

7

rather, his email suggested a test might be appropriate given Plaintiff's statement that he had been "sick since the beginning of the semester," that he had previously had "fever and was constantly coughing," and that he still had "episodic chest pain and nausea." Ex. "A" (Email thread between Plaintiff and Friedlander). More to the point, though, there is no allegation Dr. Friedlander threatened Plaintiff's status as a student, that he required Plaintiff to submit to a tuberculosis test, or that Plaintiff refused to do so and therefore suffered negative consequences. Nor does Plaintiff allege that Dr. Subbarao's decision to issue Plaintiff a Non-Academic Warning was based on Dr. Friedlander's concern about Plaintiff's health status.

Third, Plaintiff's allegation that Dr. Friedlander "communicated" his concerns about Plaintiff to Dr. Smith-Trigg cannot establish interference with a contractual relationship. No alleged facts indicate that this "communication" harmed Plaintiff or otherwise interfered with his medical education. Likewise, Plaintiff's allegation that Dr. Friedlander "ejected" him from his office and refused to speak do not form the basis for a Section 1981 claim, as he does not identify a contractual right impaired by either such action.

Finally, the allegation that Dr. Friedlander "communicated" with Dr. Subbarao about his confrontation with Plaintiff does not support his Section 1981 claim. There is no allegation that such a communication was inconsistent with Plaintiff's purported contracts with the University. Moreover, Plaintiff does not allege Dr. Friedlander removed him from campus, asked that he be removed from campus, recommended disciplinary action against Plaintiff, or was involved in any decision to discipline Plaintiff.

Plaintiff does allege "Defendant Friedlander's prejudice against Plaintiff made it impossible for Plaintiff to study under him." Compl., at ¶ 19 [Doc. 1]. However, leaving aside the fact that he cannot establish any such prejudice, he alleges no facts to plausibly support this

8

conclusion. He does not, for instance, allege Dr. Friedlander refused to teach him, or even that he was required to study under Dr. Friedlander to continue his medical education. Plaintiff's Complaint does not plead facts sufficient to establish that Dr. Friedlander interfered with any legally protected contractual right.

      c.     *Plaintiff has not alleged discriminatory intent.*

Plaintiff's Complaint also fails to allege facts that, even if true, would prove Dr. Friedlander discriminated against him because of his race. The Fifth Circuit has held that "'naked allegation[s]' of discriminatory intent are too conclusory to survive a motion to dismiss" a Section 1981 claim. *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (*citing Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988) (en banc)). While an "allegation that similarly situated non-minorities received better treatment" may give rise to an inference of discrimination, "generalized allegations" that do not identify "specific instances" of disparate treatment do not satisfy this standard. *Body by Cook*, 869 F.3d at 386. Plaintiff must allege the purported comparators were granted more favorable treatment under "nearly identical circumstances" such that any dissimilarities do not likely account for the difference in treatment. *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009); *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001).[4]

Plaintiff told Dr. Friedlander in late September that he had been "sick since the beginning of the semester," that he had previously had "fever and was constantly coughing," and that he still had "episodic chest pain and nausea." Ex. "A" (Email thread between Plaintiff and Friedlander). Plaintiff's Complaint does not allege that Dr. Friedlander treated non-Chinese

---

[4] *Lee* and *Wallace* are Title VII cases, but "[t]he analysis of discrimination claims under § 1981 is identical to the analysis of Title VII claims." *Body by Cook*, 869 F.3d at 386 (*citing Jones v. Robinson Prop. Grp. L.P.*, 427 F.3d 987, 992 (5th Cir. 2005)).

students differently than him after they reported such symptoms to him. Rather, he refers to the class of comparators as "students with colds, who were not of Chinese nationality…." Compl., at ¶ 9 [Doc. 1]. This generalized allegation does not suffice to allege discriminatory intent.

Plaintiff reported missing an academic session because he was struggling with some longstanding and potentially serious illness. Even if a comment about a hypothetical tuberculosis test could be construed as an adverse action (and it cannot), Plaintiff cannot use any William Carey student who has had a "cold" as a comparator because those students' experiences would not be "nearly identical" to Plaintiff's. There is little doubt Plaintiff could find proof that non-Chinese students at William Carey had "colds" or other "minor illnesses" while Plaintiff was enrolled at the school, but such proof would not be probative as to Dr. Friedlander's discriminatory intent. Plaintiff has failed to allege Dr. Friedlander acted with intent to discriminate against him because of his race.

> d. *Plaintiff cannot prove but-for causation as required under Section 1981.*

The U.S. Supreme Court recently rejected the argument that Section 1981 claims should be subject to the more forgiving "motivating factor" causation test provided for Title VII claims in the Civil Rights Act of 1991 rather than the more stringent "but-for" causation test applicable to other civil rights claims. *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 331, 341 (2020). "In other words, [Plaintiff] cannot sustain his § 1981 claim merely by demonstrating race was a 'motivating factor;' he must prove [Dr. Friedlander's] challenged actions 'were taken on account of or by reason of' [Plaintiff's] minority status …." *Reed v. Nissan N. Am., Inc.*, No. 3:20-CV-49-KHJ-FKB, 2021 U.S. Dist. LEXIS 88419, at *21 (S.D. Miss. May 10, 2021) (*citing Comcast*, 589 U.S. at 334). "But-for cause" does not mean "sole cause," but it is a "cause without which the event could not have occurred." *Leal v. McHugh*, 731

F.3d 405, 415 (5th Cir. 2013) (citing Black's Law Dictionary 250 (9th ed. 2009)).

Plaintiff's allegations, if proven, would not establish that Dr. Friedlander's alleged comments about tuberculosis were a but-for cause of any action against him by the University. Plaintiff's Complaint also concedes he already had to repeat a year of medical school because of his performance on a test. Compl., at ¶ 22 [Doc. 1]. However, he claims his alleged inability to complete medical school within the required six years was due to the Defendants' alleged actions "combined" with this repeat year. *Id.* at ¶ 23. In addition to Dr. Friedlander's alleged statements and his own poor performance on the test, Plaintiff alleges Dr. Subbarao contributed to his alleged harm by wrongfully instructing him to leave campus, issuing him a disciplinary warning without cause, interfering with his studies, and failing to ensure clear communication from his office. Compl., at ¶¶ 14-20 [Doc. 1]. Other than his own conclusory allegations that Dr. Friedlander harmed him, Plaintiff has alleged no facts to establish that he would have finished medical school but for Dr. Friedlander's alleged statements. Plaintiff has failed to state a claim against Dr. Friedlander for race discrimination in violation of Section 1981, and that claim should be dismissed.

2.   *Dr. Friedlander did not interfere with any contract between Plaintiff and WCU.*

Plaintiff also alleges Dr. Friedlander "intentionally interfered with Plaintiff's contract with William Carey University by falsely claiming Plaintiff had tuberculosis, which ultimately led to Plaintiff's inability to return to school and loss of his career." Compl., at 9 [Doc. 1]. This claim fails for largely the same reasons as his discrimination claim against Dr. Friedlander.

Tortious interference with contract is "malicious or intentional interference with a valid and enforceable contract by a third party which causes one contracting party not to be able to perform and the failure to perform results in a monetary loss for the other contracting party."

*Cromwell v. Williams*, 333 So. 3d 877, 882 (Miss. Ct. App. 2022) (*citing Courtney v. Glenn*, 782 So. 2d 162, 164-65 (Miss. Ct. App. 2000)). A plaintiff asserting such a claim must prove the defendant's acts were intentional and willful, that they were calculated to cause damage to the plaintiff, that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant, which constitutes malice, and that that actual damage and loss resulted. *Cromwell*, 333 So. 3d at 882 (*citing Cenac v. Murry*, 609 So. 2d 1257, 1268 (Miss. 1992)).

An inference of intentional and willful conduct requires that the defendant had knowledge of the contract and acted with substantial certainty that the act would interfere with the contract. *AmSouth Bank v. Gupta,* 838 So. 2d 205, 214 (Miss. 2002). A showing of proximate causation is also required, *Cromwell*, 333 So. 3d at 882 (*citing Scruggs, Millette, Bozeman & Dent P.A. v. Merkel & Cocke P.A.*, 910 So. 2d 1093, 1099 (Miss. 2005)), as is proof that "the contract would have been performed but for the alleged interference." *Gulf Coast Hospice Ltd. Liab. Co. v. LHC Grp. Inc.*, 273 So. 3d 721, 745 (Miss. 2019) (*citing Levens v. Campbell*, 733 So. 2d 753, 761 (Miss. 1999)).

For many of the same reasons discussed above, Plaintiff has failed to plead facts that would state a plausible tortious interference claim against Dr. Friedlander. Dr. Friedlander did not act willfully in a manner calculated to harm Plaintiff – to the contrary, the email exchange reflects that Dr. Friedlander was *counseling* him about how to succeed in his program.

Likewise, nothing in Plaintiff's pleadings suggests Dr. Friedlander did anything without right or justifiable cause. At best for Plaintiff, Dr. Friedlander was a professor in Plaintiff's program of study, asking why Plaintiff missed an academic session, and reporting concerns about Plaintiff's absences and behavior to the administrators in the same program of study. No

allegation in the Complaint suggests that such acts are inconsistent with the responsibilities of a higher education professor.

Finally, Plaintiff has not alleged that Dr. Friedlander did anything that was a but-for cause of actual damage or loss. There are no facts alleged that connect Dr. Friedlander's mention of tuberculosis to Plaintiff's choice not to return to school. To the contrary, the Complaint attributes Plaintiff's temporary removal from campus and *every other alleged wrongful act thereafter*, including the decision to issue Plaintiff a disciplinary warning, to Dr. Subbarao. Compl., at ¶¶ 12-21 [Doc. 1]. Plaintiff's claim that Dr. Friedlander's alleged acts "led to [his] inability to return to school and loss of his career" is not plausible on the face of the pleadings, and his tortious interference claim should be dismissed.

## CONCLUSION

Plaintiff has failed to plausibly state a claim for race discrimination or tortious interference with contract against Defendant Edward Friedlander. All claims against Dr. Friedlander should be dismissed with prejudice.

THIS, the 12th day of March 2025.

    Respectfully submitted,

    EDWARD FRIEDLANDER, M.D.

    */s/ Paul B. Watkins, Jr.*
    PAUL B. WATKINS, JR. (MB NO. 102348)
    J. ANDREW MAULDIN (MB No. 104227)
    *Attorneys for Defendant*

OF COUNSEL:

MAYO MALLETTE PLLC
2094 Old Taylor Road, Suite 200
Oxford, Mississippi 38655
Telephone: (662) 236-0055
Facsimile: (662) 236-0035
*pwatkins@mayomallette.com*
*dmauldin@mayomallette.com*